IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 44232

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2017 Unpublished Opinion No. 446 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 25, 2017 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOSEPH ANTHONY MAURO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Scott L. Wayman, District Judge.

Judgment of conviction, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Joseph Anthony Mauro appeals from a judgment of conviction entered upon a jury verdict finding him guilty of insurance fraud. Mauro contends the State committed prosecutorial misconduct by stating that his girlfriend's knowledge regarding the insurance fraud was irrelevant. He argues this was a misstatement of the law because the State was required to prove a shared criminal intent between Mauro and his girlfriend in order to convict Mauro of committing insurance fraud under an aiding and abetting theory. Mauro contends the error was not harmless beyond a reasonable doubt. The State argues the prosecutor did not misstate the law because the State was only required to prove the criminal intent of Mauro. Even if there was error, the State contends any such error was harmless.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2014, Mauro reported the theft of a tractor belonging to his girlfriend. Mauro drove his girlfriend to the insurance office to report the tractor as stolen. His girlfriend filled out a sworn proof of loss statement with the insurance company, which stated it was her policy and she was the only owner of the tractor. Mauro negotiated a $12,000 payout with the insurance company on the claim, and the insurance company issued the funds to Mauro's girlfriend.

When Mauro and his girlfriend broke up, Mauro contacted the insurance company and informed them that the tractor was never stolen and was located on a friend's property. The insurance company contacted law enforcement. During the investigation, law enforcement interviewed Mauro. Mauro explained how he and his girlfriend conspired to defraud the insurance company by hiding the tractor on the friend's property and reporting it as stolen.

The State charged Mauro with insurance fraud, Idaho Code §§ 41-293, 18-204, and obstructing an officer, I.C. § 18-705. The case proceeded to trial. Before trial began, the prosecutor filed proposed jury instructions. Mauro made no objections to the proposed instructions. After the district court finalized the instructions, Mauro stated he had no objections to the instructions. At the close of the trial, the district court instructed the jury. Jury Instruction No. 17 read as follows:

> In order for the defendant to be guilty of Insurance Fraud, the state must prove each of the following:
>
> 1. On or about April 7, 2014 through April 25, 2014
> 2. in the state of Idaho
> 3. the defendant JOSEPH ANTHONY MAURO
> 4. did aid and abet another in preparing or making any statement
> 5. that was presented to Farm Bureau Insurance of Idaho in support of a claim for payment of a benefit under an insurance policy
> 6. with the knowledge that the information was false as to a material issue of the claim,
> 7. and with the intent to defraud or deceive Farm Bureau Insurance of Idaho
>
> If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

In closing rebuttal argument, the prosecutor explained Jury Instruction No. 17, stating:

And when you look at Instruction 17, the knowledge element, with the knowledge that the information was false. Mr. Mauro assisted, solicited, procured [his girlfriend's] involvement in committing a crime. . . .

. . . .

And so Instruction 17 doesn't have anything in there about whether or not [his girlfriend] had knowledge. This is about the knowledge that Mr. Mauro had, that, when he assisted her, when he drove her to the insurance company to file that report, his knowledge, the information he provided her, that he reported the tractor stolen and that he filed the police report--his knowledge that that was false. It does not ask you to consider her knowledge.

Mauro's trial counsel objected, stating: "I believe is a misstatement of the law." The court responded: "Well, the instructions do set forth the law. I'll let the jury sort that out." The prosecutor continued her closing rebuttal argument, stating:

So you can go back and look through the jury instructions. You can look through the aiding and abetting, but nowhere in this elements Instruction No. 17 does it require that [his girlfriend] be convicted, be charged with any crime. [His girlfriend's] not on trial here today. It's Mr. Mauro. This is his trial. This has nothing to do whether or not she was convicted of this crime.

The jury found Mauro guilty of insurance fraud and obstructing an officer. After the verdict, Mauro filed a motion for judgment notwithstanding the verdict and a motion for mistrial. The district court construed the motions as a motion for acquittal and a motion for a new trial, and denied both motions. The district court sentenced Mauro to a unified sentence of four years, with one year determinate, suspended the sentence, and placed Mauro on probation for two years. Mauro timely appeals.

## II.

### STANDARD OF REVIEW

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* When there has been a contemporaneous objection we determine factually if there was prosecutorial misconduct, then we determine whether the error was harmless. *Id.*; *State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007). Where a defendant meets his or her initial burden of showing that a violation occurred, the State has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional

3

violation did not contribute to the jury's verdict. *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010). A conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Pecor*, 132 Idaho 359, 367-68, 972 P.2d 737, 745-46 (Ct. App. 1998).

## III.

## ANALYSIS

Mauro argues that the prosecutor committed prosecutorial misconduct during closing rebuttal argument when she misstated the law by asserting the knowledge element of the crime required the jury to consider only Mauro's knowledge, not his girlfriend's knowledge. The State asserts the prosecutor did not misstate the law because under the applicable law, the State was only required to prove Mauro's criminal intent.

Before closing arguments, the district court instructed the jury pursuant to Jury Instruction No. 17. The knowledge element of Jury Instruction No. 17 required the jury to find that Mauro did aid and abet another in preparing or making a statement to the insurance company and when doing so, Mauro knew the information was false. During closing rebuttal argument, the prosecutor stated that the jury was not required to determine the knowledge of Mauro's girlfriend. Rather, the prosecutor stated the jury was only required to determine whether Mauro knew the information given to the insurance company by his girlfriend was false.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id*.; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. It is prosecutorial misconduct for a prosecutor to misstate the law during closing argument. *State v. Coffin*, 146 Idaho 166, 170, 191 P.3d 244, 248 (Ct. App. 2008).

A person is guilty of insurance fraud if he:

with intent to defraud or deceive an insurer assists, abets, solicits, or conspires with another to prepare or make any statement that is intended to be presented to any insurer, producer, practitioner or other person, in connection with, or in support of, any claim for payment or other benefit, knowing that such statement

4

> contains false, incomplete, or misleading information concerning any fact or thing material to such claim.

All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet in its commission, are principals in any crime so committed. I.C. § 18-204. In order to be convicted under I.C. § 18-204 for aiding and abetting the commission of a crime, a person must act in such a way as to facilitate, promote, encourage, solicit, or incite the actions of the crime. *State v. Mitchell*, 146 Idaho 378, 383, 195 P.3d 737, 742 (Ct. App. 2008). However, mere knowledge of a crime or assent or acquiescence in its commission does not create accomplice liability through aiding and abetting. *Id.* Instead, aiding and abetting requires some proof that the accused either participated in or assisted, encouraged, solicited, or counseled the crime, *State v. Rivas*, 129 Idaho 20, 24, 921 P.2d 197, 201 (Ct. App. 1996), or some manifestation of "a sharing by the aider and abettor of the criminal intent of the perpetrator." *State v. Gonzalez*, 134 Idaho 907, 909, 12 P.3d 382, 384 (Ct. App. 2000); *State v. Hickman*, 119 Idaho 366, 367, 806 P.2d 959, 960 (Ct. App. 1991). Because there is no distinction between principals and aiders and abettors, a charging document need only allege facts necessary to convict a principal. *State v. Adamcik*, 152 Idaho 445, 462, 272 P.3d 417, 434 (2012). A defendant is presumed to know that the charge includes both committing the crime as the principal and acting as an accessory before the fact. *Id.* Thus, the aider and abettor must have the requisite intent and have acted in some manner to bring about the intended result. *Gonzalez*, 134 Idaho at 909, 12 P.3d at 384.

In *State v. Mitchell*, 146 Idaho 378, 195 P.3d 737 (Ct. App. 2008), this Court explained that an aider and abettor must have the requisite intent required by statute as if he was the principal. *Id.* at 384, 195 P.3d at 743. There, the defendant was charged with aggravated battery, under an aiding and abetting theory, robbery, and burglary. *Id.* at 381, 195 P.3d at 740. At trial, one of Mitchell's co-defendants testified the plan was to rob the victim because Mitchell knew the victim had $5,000 cash. *Id.* The co-defendant testified Mitchell waited in the car while the co-defendants robbed the victim. During the robbery, the victim was shot. *Id.* Mitchell provided the co-defendants with a loaded gun. *Id.* at 384, 195 P.3d at 743. The rare ammunition used in the robbery was found at Mitchell's apartment. *Id.* Mitchell argued on appeal that there was insufficient evidence for the jury to find Mitchell had the requisite intent to commit the aggravated battery. *Id*. at 383, 195 P.3d at 742. Mitchell argued that because shooting the victim

5

was not part of the plan and because Mitchell was not the shooter, the State could not prove that Mitchell had the requisite intent--that of a principal--for aggravated battery. *Id*.

The Court reasoned that to find Mitchell guilty of aggravated battery under an aiding and abetting theory, the State was required to show Mitchell knowingly aided and abetted the use of a deadly weapon to unlawfully and intentionally cause bodily harm to the victim. *Id*. at 384, 195 P.3d at 743. In reviewing the sufficiency of the evidence, the Court analyzed whether Mitchell's knowledge was sufficient to find Mitchell acted as a principal. *Id*. at 383-84, 195 P.3d at 742-43. The Court held there was sufficient evidence for the jury to infer that Mitchell knowingly provided a weapon with the intent that it be used against someone during the robbery and, therefore, Mitchell had the requisite intent of a principal to commit an aggravated battery. *Id*. at 384, 195 P.3d at 743.

Similar to *Mitchell*, Mauro was charged with insurance fraud as a principal, which includes charging him as an aider and abettor. The material elements of I.C. § 41-293(b) require the State to prove that Mauro, as if he were a principal, knew the statement presented to the insurance company was false. *See* I.C. § 41-293(b). Thus, the State had to prove that Mauro had the intent to commit insurance fraud and acted in furtherance of that intent by aiding and abetting his girlfriend to commit insurance fraud. In other words, the State had to establish that Mauro either "participated in or assisted, encouraged, solicited, or counseled the crime." *Rivas*, 129 Idaho at 24, 921 P.2d at 201. In this case, the State met that burden. Here, Mauro told the insurance company that he actively participated in hiding the tractor with his girlfriend, he drove his girlfriend to the insurance company to file the claim, and he then negotiated a settlement on behalf of his girlfriend. With that quantum of evidence, the State established the Mauro participated in or assisted in committing insurance fraud, which the State was required to prove.

Given that, the prosecutor did not misstate the law in closing rebuttal argument. The prosecutor stated Jury Instruction No. 17 required the jury to determine whether Mauro knew the information about the tractor given to the insurance company by his girlfriend was false; it did not require the jury to determine his girlfriend's knowledge. Because the State was only required to prove Mauro's intent, the prosecutor did not misstate the law. Thus, there was no

6

prosecutorial misconduct and we need not address Mauro's argument that any error was harmless.[1]

## IV.

## CONCLUSION

The prosecutor did not commit prosecutorial misconduct because her closing rebuttal argument correctly stated the applicable law. The district court's judgment of conviction is affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR**.

---

[1] To the extent Mauro's objection was an objection to Instruction No. 17, Mauro must demonstrate fundamental error because he did not raise an objection to the jury instructions in the district court. Mauro does not allege or argue in his brief that the unobjected-to error was fundamental error. Similarly, Mauro did not object to the lack of a jury instruction regarding his girlfriend's intent. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). As such, Mauro has waived this issue on appeal.